## CLARKSVILLE BUILDING AND LOAN ASSOCIATION *vs.* STEPHENS and others.

1. Where a party, by his own negligence, has deprived himself of the written evidence of payments claimed to have been made by him, (which was by entry in a book provided for that purpose,) to avail himself of such payments, he must produce convincing proof of their having been made. Uncertain, vague, and indefinite statements will not suffice.

2. A provision in the constitution of a loan association, authorizing the imposition of fines upon its stockholders for non-payment of monthly interest, of ten cents for each loan of $200, (the law creating such corporations giving them power to impose fines of limited amount,) held to be valid.

3. Such provision does not violate the usury laws, and taint a mortgage given to the association by a stockholder, to secure money not advanced by way of loan, but advanced by the corporation as a payment by anticipation of what will be the value of his stock in the corporation on its dissolution and distribution of assets.

4. A stockholder of a loan association having made payments to the association, which had not been appropriated to any portion of his several sources of indebtedness, on bill to foreclose a mortgage given by him to the association, the payments were directed to be appropriated: first, in payment of the monthly fines; then to the monthly installment on subscription to stock, and the balance to the monthly interest.

Heard on bill, answers, and proofs.

*Mr. John H. Nunn* and *Mr. Martin Wyckoff,* for complainants.

*Mr. George A. Allen,* for defendants.

THE VICE-CHANCELLOR.

This suit is brought to enforce the payment of two mortgages, given by a stockholder of the complainant corporation to the corporation. Payment can only be enforced for default in the payment of interest. Paragraph 6 of Article 8, of the constitution, provides : " If the interest is suffered to remain

unpaid more than six months, the directors may compel payment of the principal and interest by ordering proceedings on the bond and mortgage, according to law."

One point in dispute is, whether six months' interest was in arrear at the time the suit was brought. The defendants concede the complainants had a right of action at the time this suit was instituted, unless they are entitled to a credit of $100 for a payment they claim to have made, and which the complainants deny. The defendants also claim that no part of the moneys paid by them can legally be appropriated to the payment of fines, but the whole amount must now be applied, by the court, in discharge of interest or the monthly payments for subscription to stock, because the provision of the constitution authorizing the imposition of fines for non-payment of interest, is repugnant to the usury laws.

The proof fails to convince me the defendants should have credit for the $100. It consists entirely of the evidence of the defendant, William D. Stephens, and his son Albert. Each member was furnished by the complainants with a book, in which he had a right to have his payments entered by an officer of the association at the time they were made. The defendants explain the omission of the credits claimed, by setting up their neglect to present their book. Having failed to avail themselves of a safeguard provided by the complainants against the error they allege, they should be required to produce convincing proof. The evidence of William D. Stephens is of the most dangerous kind. He fixes no time when the alleged payments were made. His statement is: "It was between the month of March, 1872, and the next March, of 1873 ; it was something like a year, if my memory serves me right." It is impossible to test the accuracy, or investigate the truth or falsity of such a statement. It is too indefinite to be reliable. Besides, his recollection is untrustworthy. One of the alleged payments made by the son was $50 ; the father thought it was $100 ; and, so strong was his recollection, he insisted the son should attempt to restore his faded memory. His contract required him to pay $49.84 monthly ;

$23 subscription to stock, and $26.84 interest. He says he fell so far behind, at one time, as to be required to pay $87 to satisfy arrearages ; and after that, his payments were made punctually, except on two occasions ; once he was $25 short, and at another time, $5. His book shows a single payment of $87, made April, 1872. It shows no payments were made in May, August, and October, 1872, and that those made for July and September were not $49.84 each, but were respectively $75 and $100. But a single payment of $49.84 was made between January, 1872, and January, 1875. The others range from $30 to $110. The fairness of the book has not been disputed, except it is claimed it should have contained two additional credits of $50 each. It is clear, unless the account it contains is so false as to be fraudulent, Mr. Stephens' recollection is in conflict with the truth. Before the commencement of this suit, Mr. Stephens appeared before the directors of the complainant corporation to satisfy them he was entitled to additional credit. At that time, the proof shows, he limited his claim to an additional credit of $50.

I think the payment of $50, claimed to have been made by Albert to Mr. Humphrey, is credited. Albert says he thinks it was made in March, April, or May of 1872, or thereabouts. A payment of $50 is credited in June, 1872. His recollection of the time, it will be observed, is quite faint, and June will clearly fall within the period he has designated as " thereabout." It is proper to add, the person to whom the defendants claim to have made the disputed payments, denies, positively, in very general terms, the payment of any moneys not credited.

The additional credits claimed by the defendants must be denied.

Are the fines imposed for the non-payment of the monthly interest, invalid ?

Portions of the payments made by the defendants have already been appropriated to the payment of fines. Their validity, or the complainants' right to appropriate the payments to their satisfaction, has never been disputed. The

payment of $89.92, December, 1871, was just sufficient to pay the whole current indebtedness of the defendants up to that date, including $16.95 for fines. It must be assumed, from the amount of the payment then made, the defendants admitted the validity of the fines. They paid them without question.

Separated from the language giving authority to impose a fine for non-payment of subscriptions to the stock, the constitutional provision assailed is expressed as follows: "A stockholder, for refusing or neglecting to pay his or her monthly interest, as often as the same shall become due, shall, for each and every such monthly neglect, forfeit and pay a fine of ten cents for each loan of $200 by him or her held."

Neither the condition of the bond, nor the terms of the mortgage, contain any provision for the collection of these fines. The complainants do not claim they can be enforced against the mortgaged premises as part of the sum to be raised by a sale. The contention of the defendants is, that the constitutional provision above quoted is a plain infraction of the usury laws, because it authorizes the taking of a higher rate of interest than seven per centum per annum, in case payment is not made at the exact time specified in the contract. They say there never were any fines, for want of power to impose them, and the money taken in payment of them still belongs to the defendants, and must now be applied by the court in discharge of the mortgage debt.

It will be perceived this objection rests entirely on the assumption that the mortgage was given to secure the repayment of a loan of money. It has no other foundation. This assumption misapprehends, according to the almost uniform course of judicial opinion, the true character of the transaction giving existence to the mortgage and its object. It is not intended to secure the repayment of a loan. If the mortgagor performs his obligation as a stockholder of the corporation, no principal sum is to be repaid. The sum he receives from the corporation on the execution of the mortgage, is a payment by anticipation of what will be the value of his stock in the corporation on its dissolution and distri-

bution of assets among the proprietors. Having received the ultimate value of his stock in advance of the other stockholders, and long before the period fixed for the final distribution of assets, and being liable to pay monthly installments on his subscription to the stock of the corporation, he executes a mortgage, not to secure the repayment of a loan, but the performance of his contract with his fellow stockholders. Chancellor Green, in *Hoboken Building Association* v. *Martin*, 2 *Beas.* 427, defining the character of a transaction similar to the one under consideration, says : "The money was not advanced by way of loan, but in redemption of the defendant's share, a mode of investment provided for by the constitution of the asssociation, authorized by the act of incorporation." Substantially the same view was expressed in *Delano* v. *Wild*, 6 *Allen* 1 ; *Bowker* v. *Mill River Loan Association*, 7 *Allen* 100 ; *Merrill* v. *McIntire*, 13 *Gray* 165 ; *Mosley* v. *Baker*, 6 *Hare* 87 ; *S. C., on appeal*, 3 *De Gex, Macn. & Gor.* 1032 ; *Seagrave* v. *Pope*, 1 *De Gex, Macn. & Gor.* 783 ; *S. C., under title of Fleming* v. *Self*, 3 *De Gex, Macn. & Gor.* 997 ; *Parker* v. *Butcher*, 3 *Eq. Cases* (*E. L. R.*) 762. In *Delano* v. *Wild, supra,* the court held, in consequence of the relation existing among the members of such an association, no usurious contract could be made by one with the other. Merrick, J., read the opinion, in which he says : " The transaction between the parties cannot be deemed to embrace an agreement between them for the reservation or payment of usurious interest, because it was a dealing between them as partners, in relation to a partnership fund, in which they had a common interest. They all participated, in proportion to their respective rights, or number of shares in the company respectively subscribed for and taken, in the consequences resulting from the transaction. To this extent they severally were benefited by the gain, or suffer by the loss, resulting from it. In such a case, there can be no violation of the statute regulating the rate of interest." The association, in this case, was unincorporated, but the principle declared, if sound, must govern the rights

of the members of an incorporated association. The law creating such corporations gives them power to impose fines of limited amount. *Nix. Dig.* 92. The amount in this case is within the limit, and reasonable.

I am of opinion the constitutional provision authorizing the imposition of the fines in question, is valid.

The payments made by the defendants, as members of the complainant corporation, since December, 1872, have not been appropriated to any portion of the several sources of indebtedness of the defendants, except so far as a general credit is an appropriation. This condition of affairs casts the duty of making an appropriation on the court. The court, in such cases, is controlled by purely equitable considerations, and as it is always equitable that a debtor should pay his whole indebtedness, whether secured or unsecured, the court usually directs the payment of that which is most precarious first. *Field* v. *Holland*, 1 *Am. Lead. cases* 275, *and notes.* In conformity to this rule, the master, in computing the amount due on the mortgages, must apply each monthly payment, first, in payment of the fines of that month, then to the monthly installment on subscription to stock, and the balance to the monthly interest. No interest will be computed on the fines, subscription to stock or redemption money.

I will advise a decree in conformity to the foregoing views.

I think Campbell, Lane & Co., and Cyrenius A. Johnson, are not proper parties. They have no interest in the mortgaged premises. The bill, as to them, should be dismissed, but without costs. The costs of bringing them into court as parties, must not be taxed against the defendants.